**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHLEEN HEATH, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>EVENFLO COMPANY, INC.<br>Defendant. | Civil Action No. 1:25-cv-12993<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Kathleen Heath ("Plaintiff"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this class action complaint against Defendant Evenflo Company, Inc. (the "Defendant" or "Evenflo"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. This is a class action lawsuit against the Defendant regarding the manufacture, distribution, and sale of its Revolve360 Gold and Revolve360 Slim child seats manufactured between December 1, 2022, and December 8, 2024 (the "Affected Products").[1]

2. Evenflo imported the Affected Products that were manufactured in China and were

[1] The model numbers included in the recall are as follows3: 36812449, 36812449AZ, 36812450, 36812450POP, 36812450AZ, 36812451, 36812451AZ, 36812467, 36812467AZ, 36812468, 36812468AZ, 36812469, 36812469AZ, 36812470, 36812470A, 36812470TGT, 36812471, 36812501, 36812501A, 36812504. *See* https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-6050.pdf (last accessed October 13, 2025).

priced approximately between $200 and $500.[2]

3. Evenflo manufactured and distributed the Affected Products with headrest foam which can become dislodged, which poses a choking hazard if placed in the child's mouth.

4. According to the National Highway Traffic Safety Administration, "the headrest is accessible underneath the soft goods cover. The field experience demonstrates that the tape employed to protect against a child picking off pieces of foam does not extend sufficiently far to be fully effective."[3]

5. The Affected Products pose a choking hazard because the headrest foam is not adequately secured away from the child, which can allow the child to pick off pieces of foam, which poses a choking hazard if placed in the child's mouth.

6. This is a design defect, which Defendant has acknowledged through a product recall, posing a choking hazard to children using the seat as intended.[4] Consumers, including Plaintiff, would not have purchased the Affected Products, or at the very least paid less for the Affected Products, if she knew about the defect.

7. Plaintiff and other consumers had a reasonable expectation that the Affected Products would not pose a choking hazard, including the risk that the headrest foam could be dislodged, choking the child and causing injury. [5]

8. Pieces of foam can present a choking hazard to a child.[6]

---

[2] *Revolve360 Slim 2-In-1 Rotating Convertible Car Seat*, EVENFLO, https://www.evenflo.com/products/revolve360-slim-rotational-car-seat-core-plus?srsltid=AfmBOor_5QB_NkZLGdBCX6gjAdLMcaRY91u0qi_88NOnkw1g3M9UJ-8l (last visited Oct. 13, 2025).

[3] *Evenflo, "Part 573 Safety Recall Report 25C010*, NHTSA (Sept. 29, 2025), available at https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf (last accessed Oct. 13, 2025).

[4] *Evenflo, Letter Acknowledging Recall Campaign No. 25C010*, NHTSA (Sept. 29, 2025), https://static.nhtsa.gov/odi/rcl/2025/RCAK-25C010-7322.pdf (last accessed Oct. 13, 2025).

[5] *Id.*

[6] *Id.*

9. Evenflo's own product page makes affirmative safety-and-convenience claims that are misleading by omission. On its website, Evenflo proclaims that: "Evenflo is committed to providing child safety through research, testing, design and community."[7] *See Figure 1* below.



# SAFETY TECHNOLOGY

Evenflo is commited to providing child safety through research, testing, design, and community.

At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard. We also continually enhance our products with new technologies that distribute crash forces away from your child during a crash.

*Figure 1: Screenshot from Evenflo's website highlighting safety technology and product safety claims.*

10. Evenflo's product manual for the Affected Products instructs consumers on numerous safety safeguards, none of which have to do with the dislodging of the headrest foam, despite its danger.[8]

11. The product manual, packaging, and advertising for the Revolve360 Slim omit any warning that children may be able to access and ingest the headrest foam, posing a choking hazard.

12. Those safety-related representations were misleading by omission, and the Affected Products, by Evenflo's own admission, posed a known safety hazard.

13. Evenflo's representations about safety omitted critical safety details.

14. On September 30, 2025, the National Highway Traffic Safety Administration

---

[7] *SAFETY TECHNOLOGY*, EVENFLO *https://www.evenflo.com/pages/safety-technology?srsltid=AfmBOopjR-t21wYybfwFqKKhJ_ruLti7hJS1XQ-KaLMZOyJ-SYMrQFMc* (last visited October 13, 2025).

[8] *Evenflo Revolve360 Slim Owner's Manual*, available at https://evenflo-cms-assets.s3.amazonaws.com/manuals/us_gold-revolve360-slim-convertible-car-seat/en/us_gold-revolve360-slim-convertible-car-seat_EN.pdf? (last accessed Oct. 13, 2025).

("NHTSA") announced a recall of approximately 324,000 of the Affected Products. The recall identified a hazard that "the Car Seat's headrest foam can be accessed by children, posing a choking hazard to consumers." The recall covered the Affected Products.[9]

15. As a proposed remedy, Evenflo will mail owners additional tape seal and installation instructions.[10] Evenflo's fix involves a tape-based solution that may degrade over time due to heat, cleaning, or wear and tear and does not eliminate foam access. The remedy shifts responsibility to consumers, requiring them to install the fix without third-party verification or safeguards, thereby introducing a foreseeable risk of improper application and continued safety concerns. It provides no guidance pending installation and no compensation for prior harm or replacement option for caregivers unwilling to rely on tape to prevent a choking hazard.

16. The remedy requires at-home installation by consumers, without independent verification or oversight, which could lead to improper application and potential residual safety risks.

17. Evenflo in its own advertising video, highlights the "Sure360 Safety Installation System" as a key benefit — emphasizing getting in and out effortlessly, Lock Strong belt-tensioning system, and Tether360 technology to keep it safe and secure.[11] This endorsement of the safety features and security, reinforces a message of safety and ease of use and omits any disclosure that the headrest foam may be accessed by children — a material hazard now acknowledged by the recall.

18. Evenflo had ample notice of the headrest foam hazard for many years, but still did not change the Affected Products, or warn consumers. According to the recall safety report,

---

[9] *Evenflo, Letter Acknowledging Recall Campaign No. 25C010*, NHTSA (last accessed Oct. 13, 2025).
[10] *Id.*
[11] *Revolve360 Slim 2 in 1 Rotational Convertible Car Seat How To Rotation,* YOUTUBE https://www.youtube.com/watch?v=GXWM4VxB3Aw (last visited Oct 13, 2025).

> On October 2, 2023, Evenflo first received a report of a child picking at the foam of the product headrest and placing in their mouth. Through the second quarter of 2025, Evenflo had received eight reports of foam access and ingestion. On August 4, 2025, Evenflo participated in a meeting with NHTSA's Office of Defect Investigations in which concerns were raised about these reports. ODI requested additional information and data. On August 14, 2025, Evenflo participated in a follow-up meeting in which it responded to pending questions and the matter was further discussed. Further investigation ensued. Evenflo is currently aware of a total of 11 reports that children accessed foam in the headrest of the variants of the Revolve360 Slim constituting the recall population and placed it in either their mouth or nose. Evenflo is also aware of twelve additional reports of children accessing the foam (though not ingesting it).[12]

19. Accordingly, Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals for equitable relief and to recover damages and restitution for: (i) violations of New York General Business Law, NY CLS Gen Bus §§ 349 and 350 ("GBL"), (ii) unjust enrichment**,** (iii) breach of implied warranty of merchantability and (iv) negligent design.

## PARTIES

20. Plaintiff Kathleen Heath is a citizen of Bloomfield, New York, and owns two of the Affected Products, one Revolve360 Gold Slim product and one Revolve360 Slim product. She received a product recall notice for her units of the Affected Products. The headrest foam was easily accessible by her child and was dislodged during ordinary use. Ms. Heath purchased the car seat from Amazon and routinely uses it while traveling to secure her child and relies on the car seat for everyday use. She has encountered hazardous events from the car seat. She does not think the repair kit provided by Evenflo during the recall is sufficient to safeguard her child. She is concerned that the product could pose a risk of harm to her child or others.

21. Defendant Evenflo Company, Inc. is incorporated under Massachusetts law, with its Register Agent located in Boston, Massachusetts, and maintains its office at 120 Royall Street, Suite 101, Canton, Massachusetts 02021. It is therefore a citizen of Massachusetts for jurisdictional

[12] *Evenflo Co., Inc., Part 573 Safety Recall Report 25C010*, NHTSA (last accessed Oct. 13, 2025).

purposes. Evenflo is a major manufacturer and seller of infant and juvenile products. Evenflo markets and sells the Affected Products nationwide, including through retailers from which Plaintiff and the Class purchased them.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

23. This Court has personal jurisdiction over Defendant because Defendant has its principal office within this forum state. Defendant thereby established sufficient minimum contacts by directing its commercial activities into the state and engaging in transactions that form the basis of Plaintiff's claim. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS

### I. Defendant Manufactured, Distributed, Marketed, and Sold the Affected Products

24. Defendant manufactured, distributed, marketed, and sold the Affected Products. The Affected Products were specifically marketed as a safe and easy to use product that will serve as a car seat.

25. Defendant Evenflo's own product page makes affirmative safety-and-convenience claims that are misleading by omission. It touts "360-degree rotating base for easy in and out access and emphasizes that the seat grows with your child and offers multiple recline positions for comfort."[13] Nowhere does the product page or manual disclose the material risk that children can

[13] *Id.*

dislodge the headrest foam, creating a choking hazard.[14]

26. But for Evenflo's misrepresentation and omission, Plaintiff would not have purchased the seat, would have paid less for it, and/or would have bought a safer alternative.

27. Evenflo's misrepresentations caused Plaintiff to spend money that she otherwise would not have spent.

28. On October 2, 2023, Evenflo first received a report of a child picking at the foam of the product headrest and placing in their mouth. Through the second quarter of 2025, Evenflo had received eight reports of foam access and ingestion. On August 4, 2025, Evenflo participated in a meeting with NHTSA's Office of Defect Investigations in which concerns were raised about these reports. ODI requested additional information and data. On August 14, 2025, Evenflo participated in a follow-up meeting in which it responded to pending questions and the matter was further discussed. Further investigation ensued. Evenflo is currently aware of a total of 11 reports that children accessed foam in the headrest of the variants of the Revolve360 Slim constituting the recall population and placed it in either their mouth or nose. Evenflo is also aware of twelve additional reports of children accessing the foam (though not ingesting it).

29. Defendant advertised and marketed its products as safe and reliable to protect children, highlighting the safety representations on its website[15]

---

[14] *Id.*
[15] *Revolve360 Slim 2-In-1 Rotating Convertible Car Seat*, EVENFLO (last visited Oct. 13, 2025).




*Figure 2- Screenshot from Evenflo's website showing Revolve360 Slim*

## II. History and Importance of Child Car Seat Safety

30. Historically, before modern safety regulations, makeshift child restraint methods such as burlap sacks were used. Manufacturers first began adding seat belts to child car seats in the 1960s as safety concerns gained national attention.[16]

31. In 1971, the NHTSA issued its first standards for child safety seats, requiring that such seats be properly and securely installed in vehicles. These standards laid the foundation for modern regulations that continue to prioritize child safety in vehicles.[17]

32. Per the NHTSA, proper use of car seats reduces the risk of fatal injury for infants (under 1 year old) by 71% and for toddlers (ages 1 to 4) by 54% in passenger cars. In light trucks, the corresponding reductions are 58% for infants and 59% for toddlers.[18]

---

[16] Loralai Stevenson, *Child Safety Seats: A History,* TAPROOT (Sept. 24, 2025) https://taproot.com/child-safety-seats-a-history/ (last visited Oct 13, 2025).
[17] *The History of Car Seats*, https://www.chiccousa.com/baby-talk/the-history-of-car-seats/?srsltid=AfmBOoq6-t6N--BE3tcEyor87Jz_SjLiscKXx_qfqyX9rlhfzcAojdZC (last visited Oct 13, 2025).
[18] *Occupant Protection*, NATION SAFETY COUNCIL https://injuryfacts.nsc.org/motor-vehicle/occupant-protection/child-restraint/ (last visited Oct 13, 2025).

33. Every state, including New York,[19] has child-passenger safety laws requiring age and size-appropriate restraints, that consumers comply with by purchasing a car seat.[20]

34. Consumers purchase these car seats not only to comply with the law, but also to ensure safety of their children, which is exactly why these car seat laws exist.

## III. Defendant's Design Poses a Choking Risk In The Affected Products

35. Defendant's Affected Products pose a choking hazard, the headrest foam can be dislodged, which children may place in their mouths, creating a choking hazard.

36. Although Plaintiff did not submit a formal incident report, she experienced the hazard during ordinary use and notified Defendant of the issue.

37. As shown in *Figure 3*, the red-circled areas depict exposed and crumbling foam that remains accessible to her children, creating a choking hazard.

---

[19] NY CLS Veh & Tr § 1229-c.

[20] *Child Passengers*, GOVERNORS HIGHWAY SAFETY ASSOCIATION (Mar. 2025), https://www.ghsa.org/state-laws-issues/child-passengers (last visited Oct. 13, 2025).




*Figure 3: Plaintiff's recalled Evenflo Revolve360 car seat — underside of headrest — circled areas show accessible, degraded foam along the lower edges, consistent with the NHTSA Recall 25C010 hazard.*



*Figure 4 Plaintiff's recalled Evenflo Revolve360 car seat — side view of the headrest underside — showing exposed, crumbling foam, accessible to a child even when covered and consistent with the Recall 25C010 choking-hazard defect.*

38. The Affected Products were manufactured and distributed with headrest foam which could be dislodged by children, creating a potential choking hazard. Despite the existence of this hazard, the product manuals,[21] box labeling or packaging, and online materials did not include any warnings that the children could dislodge the headrest or cause injury.

[21] *Evenflo Revolve360 Slim Owner's Manual*, EVENFLO (last visited Oct. 13, 2025).

39. Feasible, safer alternative designs were available at reasonable cost, at all relevant times, including, but not limited to, (a) adding a secured barrier to prevent children from dislodging the headrest foam; (b) non- removable headrest foam that avoids dislodging; (c) use of materials which are sturdy and durable; and (d) clear warning labels on the Affected Product.

40. Evenflo was on notice of the headrest foam hazard for extended period prior to the recall but did not redesign the Affected Products or issue appropriate warnings during that time. According to the recall safety report, "

> on October 2, 2023, Evenflo first received a report of a child picking at the foam of the product headrest and placing in their mouth. Through the second quarter of 2025, Evenflo had received eight reports of foam access and ingestion. On August 4, 2025, Evenflo participated in a meeting with NHTSA's Office of Defect Investigations in which concerns were raised about these reports. ODI requested additional information and data. On August 14, 2025, Evenflo participated in a follow-up meeting in which it responded to pending questions and the matter was further discussed. Further investigation ensued. Evenflo is currently aware of a total of 11 reports that children accessed foam in the headrest of the variants of the Revolve360 Slim constituting the recall population and placed it in either their mouth or nose. Evenflo is also aware of twelve additional reports of children accessing the foam (though not ingesting it).[22]

## IV. <u>**Defendant's False and Misleading Advertising Campaign to Promote Safety and Induce Consumers to Purchase the Affected Products**</u>

41. Evenflo and its retail partners promoted the Affected Products through video advertising, highlighted the "Sure360 Safety Installation System" as a key benefit — emphasizing getting in and out effortlessly, Lock Strong belt-tensioning system and Tether360 technology to keep it safe and secure.[23] The segment emphasized features such as "One-hand, 360 degree rotation in all modes making easy in and out access, Sure360 Safety Installation System with LockStrong belt tensioning system and Tether360 technology and some models including SensorSafe alerting

---

[22] *Evenflo, "Part 573 Safety Recall Report 25C010*, NHTSA (last accessed Oct. 13, 2025).
[23] *Revolve360 Slim 2 in 1 Rotational Convertible Car Seat How To Rotation*, (last visited Oct 13, 2025).

in real time during unsafe conditions from the car seat.[24] These marketing materials conveyed a message of safety and convenience, which omitted the risk later identified in the NHTSA recall.

42. When it sold the Affected Products, Evenflo's consumer-facing marketing was materially misleading and induced consumers to purchase and use the product under a false sense of safety and advertised its commitment to safety. By touting the safety mechanism as a benefit while concealing the known risk of sudden dislodgement, later confirmed in the recall, Evenflo engaged in deceptive and false advertising practices.

43. Nowhere does Evenflo, on the product page, packaging, or in the manual, disclose the material risk that the headrest foam may suddenly and forcefully dislodge while a child is trying to access it, creating a foreseeable choking hazard.

44. These standards require designs that minimize mechanical hazards through ordinary use.

45. Defendant positioned itself in the marketplace as a trusted and safety-conscious manufacturer of premium car seats, strollers and related products, distinguishing its Affected Products from lower-cost alternatives sold by lesser-known brands. By promoting features such as the "Sure360 Safety Installation System" design and highlighting convenience, one-handed operation, and ease of access as key benefits. Evenflo expressly marketed the Affected Products as safe. Focus on safety was a key marketing strategy of Evenflo and help build consumer trust and hence was able to sell its Affected Products across major retail platforms, including, but not limited to, Amazon.

46. Consumers reasonably relied on Evenflo's representations that its products incorporated robust safety features and met rigorous safety standards. Evenflo's marketing,

---

[24] *Revolve360 Slim 2 in 1 Rotational Convertible Car Seat How To Rotation*, YOUTUBE (last visited Oct 13, 2025).

including advertisement segments highlighting and emphasizing one-handed opening, Sure360 Safety Installation System with LockStrong and Tether360 is "one-time installation safe, secure and simple" reinforced the perception that the Affected Products were carefully engineered, tested, and safe for household use. [25]

47. As a result, consumers — including Plaintiff — were induced to pay more for the Affected Products based on Evenflo's representations of safety and convenience. assurances of quality and protection. Evenflo's conduct influenced consumer decision-making by creating the false impression that its products were meaningfully safer, when in fact the Affected Products posed a choking hazard and risk of injury to the user, as confirmed by the nationwide NHTSA recall implemented due to severe safety risks.

## V. Federal Motor Vehicle Safety Standard 213

48. Child car seats – including rear-facing, forward-facing, and convertible models like the Affected Products – are subject to federal safety regulations issued by the NHTSA, an agency within the U.S. Department of Transportation.

49. These regulations are authorized by the National Traffic and Motor Vehicle Safety Act of 1966 (49 U.S.C. § 30101 et seq.), which gives NHTSA the authority to issue minimum safety standards to protect drivers and passengers, including children, from injury or death.

50. One of these regulations is Federal Motor Vehicle Safety Standard 213, or FMVSS 213, which governs child restraint systems sold in the United States. 49 C.F.R. § 571.213. This includes requirements for crash performance, labeling, structural integrity, and instructions for use.

51. Under FMVSS 213, manufacturers must ensure that child restraint systems perform

[25] *See Revolve360 Slim 2-In-1 Rotating Convertible Car Seat*, EVENFLO (last accessed October 13, 2025).

effectively in simulated crash conditions, including meeting limits on head movement and preventing ejection or collapse. The seats must also remain stable and properly secure the child in the event of a collision.

52. FMVSS 213 also requires that manufacturers provide clear installation instructions and warnings to help consumers use the product correctly. The system must be designed in a way that allows for safe and reliable installation in vehicles by everyday users, without requiring professional assistance.

53. In addition, FMVSS 213 includes provisions aimed at minimizing reasonably foreseeable misuse. Components that are essential to safety – such as padding or inserts near a child's head or body – must be securely attached and not prone to detachment during ordinary use, cleaning, or wear.

54. It is the manufacturer's responsibility to test each product for compliance with FMVSS 213 before it goes to market and to certify that it meets all federal standards. If a product does not meet these requirements, it may be considered defective under federal law and subject to recall (49 U.S.C. §§ 30118–30120).

55. The Affected Products, as alleged in this Complaint, did not meet these safety obligations. The foam insert in the headrest area was not securely fastened, creating a risk that it could detach and pose a choking hazard to children using the seat. This risk was especially high under foreseeable conditions such as vehicle heat, movement, or routine cleaning. These are conditions that the product should have been designed to withstand in compliance with FMVSS 213.

## VI. <u>Federal Hazardous Substances Act</u>

56. In addition to federal motor vehicle safety standards, certain children's products –

particularly those intended for infants and toddlers – are also subject to safety regulations enforced by the U.S. Consumer Product Safety Commission ("CPSC") under the Federal Hazardous Substances Act ("FHSA"), codified at 15 U.S.C. § 1261 et seq.

57. The FHSA authorizes the CPSC to regulate and ban hazardous substances and products that pose a substantial risk of injury to children, including choking, ingestion, or aspiration hazards. These protections apply to products intended for children under the age of 3, which includes most car seats and child restraint systems.

58. Under the FHSA, a product presents a choking hazard if it contains or can release a "small part": defined as any object that fits entirely into a standardized test cylinder designed to approximate the size of a child's throat (16 C.F.R. § 1501.4). If a product includes or may release such a small part during reasonably foreseeable use or abuse, it is deemed a "banned hazardous substance" under 16 C.F.R. § 1500.18(a)(9).

59. The FHSA does not apply only to small toys. It also covers detachable or separable components of larger juvenile products, such as foam inserts or pads that may become dislodged during normal use or cleaning. Manufacturers must ensure that such components are securely attached and do not create a risk of choking or ingestion.

60. The Affected Products were marketed as suitable for use with infants and toddlers, including children under age 3. Accordingly, it was required to comply not only with motor vehicle safety standards, but also with FHSA choking hazard rules.

61. As alleged in this Complaint, the foam insert in the Affected Products headrest area was not adequately affixed to the seat's shell. Under heat, cleaning, or minimal force, it could become detached and present a small part choking hazard to a young child using the seat as intended.

62. The risk that the foam insert could detach and fit into a child's mouth made the product potentially violative of 16 C.F.R. § 1501, as well as the broader safety goals of the FHSA. These standards exist to prevent exactly the kind of hazard at issue here.

63. Evenflo, as a manufacturer of children's products, was responsible for ensuring compliance with FHSA regulations. If the company failed to design, test, or secure the headrest foam in a way that would prevent detachment and choking, the product may be subject to corrective action, recall, or civil penalties under 15 U.S.C. § 1264 and § 1273.

## VII. Consumers Have Been Harmed By Defendant's False and Misleading Representations

64. Defendant knew, or should have known, that the advertising and labeling claims made on the Affected Products were false and misleading. Evenflo publicly represents that its car seats are tested "above and beyond industry standards" and touts features such as an "Expanded Zone of Protection," described as three layers of superior protection that purportedly reduce side-impact crash forces by up to 50%. Evenflo further claims that its products meet or exceed all applicable federal safety standards.[26] These representations made the consumers believe that the products are designed to ensure safety and protect children during travel.

65. Defendant knew, or should have known, that their products may not actually be safe given the earlier product recalls they have issued in the past prior to the one that occurred in September of 2025.

66. Defendant's marketing materials touted the Revolve360 Slim Car Seat as "safe and convenient to use."[27] These representations were misleading because they omitted the material fact

---

[26] See https://www.evenflo.com/pages/safety-technology?srsltid=AfmBOoqRUWoBcQAT4oRmlnnCAQjuGb8OwsGE_DB32k4mm8Qn7HpBlKIL

[27] Revolve360 Slim 2-In-1 Rotating Convertible Car Seat, Evenflo, https://www.evenflo.com/products/revolve360-slim-rotational-car-seat-core?_pos=1&_sid=11a2e1d55&_ss=r (last visited Oct.8, 2025).

that the headrest foam could be easily accessed by children which could create a potential choking hazard.

67. Defendant knew, or should have known, that the advertising for the Affected Products misrepresented material facts concerning safety.

68. Defendant knew, or should have known, that the representations and statements made through its labeling and advertising would mislead consumers to purchase the Affected Products instead of competitors' cheaper products based on a false belief that the Affected Products were safer.

69. Had Defendant disclosed the true risks of the Affected Products, Plaintiff would not have purchased the Affected Products, or would have paid less for it, had the Affected Products been truthfully and accurately labeled.

## VIII. <u>The Affected Products Have Been the Subject of a Recall</u>

70. On September 30, 2025, Evenflo announced a recall of approximately 324,000 Affected Products.[28] The National Highway Traffic Safety Administration concluded that the Affected Products posed a significant risk of choking and injury.

71. Evenflo has advised its consumers "to continue using the Revolve360 Slim safely as long as your child has not been able to reach or remove the foam in the headrest, and if the child access the foam, stop using the seat and contact the team Evenflo Products Inc. to receive a repair kit".[29]

72. The recall directed consumers to contact Evenflo for a free recall repair kit which includes instructions and a special tape to cover the foam access points. This repair confirms the existence of a feasible alternative design that could have prevented the hazard at the time of sale.

---

[28] *U.S. Department of Transportation, Part 573 Safety Recall Report,* EVENFLO (last visited Oct. 13, 2025).
[29] *Id.*

73. The recall does not offer sufficient reimbursement for the premium prices consumers paid in reliance on Evenflo's misrepresentations as certain consumers may have disposed of the Affected Products given that it posed a choking hazard. Additionally, the Recall does not give consumers the option to obtain a cash refund, instead only offering a repair kit from a company they may no longer trust, with no professional installation support. Further, the repair kit may not fully address the dislodging of the headrest foam and the associated choking hazard.

**TOLLING**

74. The statutes of limitations applicable to Plaintiff's and the Classes' claims were tolled by Evenflo's conduct and Plaintiff's and Class Members' delayed discovery of their claims.

75. As alleged above, Plaintiff and members of the Classes did not know, and could not have known, that the Affected Products were dangerous. Plaintiff's and members of the Classes could not have discovered Evenflo's unlawful conduct with reasonable diligence.

**CLASS ACTION ALLEGATIONS**

76. Plaintiff brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the United States for personal/car use within any applicable limitations period (the "Nationwide Class").

77. Plaintiff brings this action individually and on behalf of the following New York subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of New York for personal/car use within any applicable limitations (the "New York Subclass").

78. Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; and (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, any entities in which Defendant or their parents and any entities

in which Defendant have a controlling interest and their current or former employees, officers, and directors.

79. Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of thousands, if not millions, of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

80. Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

a. Whether the Affected Products share a common design defect that permits access to and ingestion of headrest foam;

b. Whether Defendant knew or should have known of the defect and when

c. Whether Defendant's marketing omitted material defects/hazards;

d. Whether the recall demonstrates a feasible alternative design;

e. Whether the marketing, advertising, packing, and labeling for the Affected Products were false, misleading, and/or deceptive;

f. Whether Defendant violated the state consumer protection statutes alleged herein;

g. Whether Defendant were unjustly enriched; and

h. The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

81. Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff's, like all other Class Members, purchased one of the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

82. Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Class because his interests do not conflict with the interests of the members of the Class, and he has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiff and his counsel will fairly and adequately protect the interest of the members of the Class.

83. Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

84. Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical

matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of New York Deceptive Acts and Practices Law
### NY CLS Gen Bus §§ 349 and 350
### (On behalf of Plaintiff and the New York Subclass)

85. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

86. By the acts and conduct alleged herein, Evenflo committed deceptive acts and practices in the State of New York by making the above alleged misrepresentations directed to consumers in New York.

87. Plaintiff and other members of the New York Class are "consumers" in accordance with New York General Business Law, NY CLS Gen Bus § 349.

88. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation: (1) failing to warn or disclose to purchasers of the Affected Products were not safe for children; (2) advertising that Affected Products was safe for use for children; and (3) failing to warn in the product page or manual about the material risk that children can dislodge the headrest foam, creating a choking hazard.

89. Defendant concealed and omitted material facts regarding the true nature of the Affected Products.

90. A reasonable consumer would have considered that information important in

deciding whether to purchase the Affected Products.

91. The foregoing deceptive acts and practices were directed at consumers.

92. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

93. Defendant possessed information about the Affected Products, including, but not limited to the fact that the Affected Products was not safe for children, which was relevant to Plaintiff and Subclass members, but failed to disclose this information.

94. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

95. Evenflo's statements concerning the safety of the Affected Products, alleged above, were misleading in violation of NY CLS Gen Bus § 349. At all relevant times, Evenflo conducted trade and commerce in New York and elsewhere within the meaning of § 349 and profited from the sale of the Affected Products within New York.

96. On behalf of herself and other members of the New York Subclass, Plaintiff Heath brings this action to enjoin Defendant's unlawful and deceptive acts or practices and seek to recover their actual damages or fifty dollars, whichever is greater, per violation, three times actual damages, and reasonable attorneys' fees.

97. As a direct and proximate result of Evenflo's conduct, Plaintiff and other members of the Class have suffered damages.

98. Accordingly, Plaintiff and the Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages or statutory damages of fifty dollars and five hundred dollars under NY CLS Gen Bus §§ 349 and 350, respectively, whichever is greater, as well as punitive damages and reasonable attorneys' fees and costs. On behalf of Plaintiff and the New

York Subclass, Plaintiff also seeks an order entitling them and the New York Subclass to recover all monies which were acquired through Defendant's acts of fraudulent, unfair, or unlawful competition.

**COUNT II**
**Violation of New York Deceptive Acts and Practices Law**
**NY CLS Gen Bus § 350**
**(On behalf of Plaintiff and the New York Subclass)**

99. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

100. By the acts and conduct alleged herein, Evenflo committed deceptive acts and practices in the State of New York by making the above alleged misrepresentations directed to consumers in New York.

101. Plaintiff and other members of the New York Class are "consumers" in accordance with NY CLS Gen Bus § 350.

102. New York's General Business Law, NY CLS Gen Bus § 350, prohibits false advertising in the conduct of any business, trade, or commerce.

103. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

104. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

105. Defendant's false, misleading, and deceptive representations and omissions of fact about the Affected Products were and are directed towards consumers.

106. Defendant's false, misleading, and deceptive representations and omissions were material and are likely to mislead a reasonable consumer acting reasonably under the customary or usual circumstances.

107. Defendant's false, misleading, and deceptive representations and omissions have resulted in consumer injury or harm to the public interest.

108. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff and the New York Subclass have suffered and continue to suffer economic injury.

109. As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Affected Products on the same terms, if at all, if they knew that the Affected Products was not adequately protecting minors; and (b) the Affected Products does not have the characteristics, uses, benefits, or qualities as promised.

110. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover actual damages or five hundred dollars, whichever is greater for each violation, three times actual damages, and reasonable attorneys' fees.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of the Plaintiff and the Class)**

111. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

112. Plaintiff and Class members conferred benefits upon Defendant. Plaintiff and Class members paid money for Defendant's Affected Products that they would not have purchased or would not have purchased on the same terms, had they known that the Affected Products were

unsafe.

113. Defendant unjustly retained the benefits conferred upon by Plaintiff and Class members.

114. Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products were unsafe and could not perform as advertised. If Plaintiff and Class members had known the true nature of Defendant's Affected Products, they would not have purchased the products. Plaintiff and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

115. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

**COUNT IV**
**NEGLIGENT DESIGN**
**(On behalf of the Plaintiff and the Class)**

116. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

117. Defendant had a duty to exercise reasonable care in the design of the Affected Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

118. The Revolve360 Slim car seat's headrest is designed in a way that allows children to easily reach and remove the foam during normal use. This creates a foreseeable risk, as children can place the foam in their mouths or noses, posing a choking hazard. Even under ordinary use, the design exposes children to a danger that could have been reasonably prevented.

119. Feasible, safer alternative designs were available at reasonable cost, at all relevant times, including, but not limited to, (a) adding a secured barrier to prevent children from dislodging the headrest foam; (b) non- removable headrest foam that avoids dislodging; (c) use of materials which are sturdy and durable; and (d) clear warning labels on the Affected Product.

120. Defendant breached its duty by adopting and selling the above layout without proper safeguards.

121. This defective design was a substantial factor in causing foam from dislodging as alleged by Plaintiff and the putative Class members.

122. Defendant had actual and constructive knowledge of the defect well before the recall announcement, including consumer complaints, internal testing, and incident data accumulated over years. Defendant continued marketing and selling the Affected Products without adequate warning or redesign.

123. Plaintiff and the Class suffered damages and related losses, proximately caused by Defendant's negligent design.

**COUNT V**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**U.C.C. § 2-314**
**(On behalf of the Plaintiff and the Class)**

124. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

125. Defendant is a merchant that designed, manufactured, marketed, and sold the Affected Products for ordinary household and everyday use.

126. An implied warranty arose that the Affected Products were fit for the ordinary purposes for which such goods are used, including safely securing children and ensuring that the headrest foam could not be easily accessed by children when in use.

127. The Affected Products were not merchantable at the time of sale because the headrest foam design allows children to easily access and dislodge and remove the foam, creating a foreseeable choking hazard.

128. Defendant knew or should have known of this hazard through pre-market testing and post-sale complaints and reviews, yet continued sales without an adequate design fix or effective warnings.

129. Plaintiff and Class members purchased the Affected Products from Defendant or its authorized retailers. To the extent privity is required, it is satisfied by purchases through Defendant's retail channels and/or because purchasers were intended third-party beneficiaries of Defendant's warranties.

130. Any purported warranty disclaimer or limitation is unenforceable because it was not conspicuous, is unconscionable given the undisclosed safety defect, and in all events any limited remedy failed of its essential purpose.

131. Defendant had actual notice from consumer complaints and injury reports, as well as a letter sent by Plaintiff.

132. Defendant's breach was a proximate cause of injuries and damages, including choking, pain and suffering, and medical expenses, and overpayment, out-of-pocket and replacement costs, and diminution in value.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Classes, pray for relief and judgment against Defendant as follows:

a. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as the representative of the Class, and designating Plaintiff's counsel as Class Counsel;

b. Awarding Plaintiff and the Classes compensatory damages;

c. An order requiring Defendant to implement a court-supervised repair and corrective-notice program for all Affected Products;

d. Corrective advertising and disclosure statements at points of sale and on Defendant's website;

e. Disgorgement and restitution of monies received from Class Members as a result of the defective and misrepresented products;

f. Awarding Plaintiff and the Classes appropriate relief, including but not limited to actual damages;

g. For declaratory and equitable relief, including restitution and disgorgement;

h. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

i. Awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

j. Awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

k. Entering preliminary and permanent injunctive relief against Defendant, directing

Defendant to cure inadequate recall and notification processes, correct their manufacturing and marketing practices and to comply with the relevant consumer protection statutes;

l. Awarding pre-judgment and post-judgment interest;

m. For punitive damages; and

n. Granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: October 31, 2025

**LEVI & KORSINSKY, LLP**

By: */s/ Gary Ishimoto*
Gary Ishimoto
Mark S. Reich (*Pro hac vice* forthcoming)
Michael N. Pollack (*Pro hac vice* forthcoming)
33 Whitehall Street
27th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: gishimoto@zlk.com
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Gary Ishimoto, hereby certify that on October 31, 2025, a true copy of the above document was electronically filed through the Court's ECF system, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Gary Ishimoto*
Gary S. Ishimoto